# In the United States Court of Federal Claims

No. 16-1703C
(Filed: July 28, 2021)

| | |
|---|---|
| ───────────────────────── | ) |
| | ) |
| MIRIAM SANTANA on behalf of the | ) |
| ESTATE of CELESTE SANTANA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| ───────────────────────── | ) |

Military Pay Act, 37 U.S.C. § 204;
Review of Actions of Selection
Boards; 10 U.S.C. § 1558;
Administrative Remedies; Motion to
Dismiss; Cross-Motions for Judgment
on the Administrative Record

*John Bennett Wells*, Slidell, LA, for plaintiff.

*Douglas G. Edelschick*, Civil Division, U.S. Department of Justice, Washington, DC, with whom were *Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Steven J. Gillingham*, Assistant Director, for defendant. *Major Matthew T. Reeder*, U.S. Department of the Navy, Washington, DC, of counsel.

## O P I N I O N

**FIRESTONE**, *Senior Judge*.

In this action, plaintiff Miriam Santana (plaintiff), on behalf of the estate of

Lieutenant Commander Celeste Santana (LCDR Santana),[1] seeks from this court back

───────────────

[1]     LCDR Santana passed away on July 18, 2018.  After learning this, the court issued an order on September 14, 2018 directing plaintiff to provide the name of the legal representative who intended to pursue the matter on behalf of LCDR Santana's estate. ECF No. 26.  Plaintiff did so on September 27, 2018, ECF No. 27, and filed an amended complaint substituting plaintiff as the real party in interest on October 5, 2018, ECF No. 28.

pay and related relief under the Military Pay Act, 37 U.S.C. § 204.  Plaintiff alleges that the United States Department of the Navy (Navy) wrongfully discharged LCDR Santana in 2011 when the Navy decided not to continue LCDR Santana on active duty.  LCDR Santana, before her death, first filed a wrongful discharge claim in this court in 2014.  On March 12, 2016, following briefing on cross-motions for judgment on the administrative record, but prior to the court's decision, LCDR Santana requested that the Secretary of the Navy (the Secretary) convene a special board to review her non-continuation decision.  Before the Secretary responded to this request, the court in this first action concluded that LCDR Santana's wrongful discharge claim was premature because the Secretary had not yet acted on her request for special board review.  LCDR Santana appealed that decision before the United States Court of Appeals for the Federal Circuit.

On December 28, 2016, prior to the Secretary acting on her request or the Federal Circuit acting on her appeal, LCDR Santana filed this case.  Eventually, following long and complicated proceedings before the Navy, this court, and the Federal Circuit, described in greater detail below, the Secretary[2] denied LCDR Santana's request for special board review on April 21, 2020.

---

[2]     The April 21, 2020 decision by the Secretary was signed by the Assistant Secretary of the Navy for Manpower and Reserve Affairs, Administrative R. (AR) at 1, 6, ECF No. 53, under the delegation set forth in Secretary of the Navy Instruction (SECNAVINST) 1402.1, which governs, among other things, the convening of special boards.  *See* Def.'s App. Accompanying Def.'s Resp. to Pl.'s Mot. for J. Upon the Administrative R., and Def.'s Cross-Mot. for J. Upon the Administrative R. (DA) at 7 ("The Assistant Secretary of the Navy (Manpower and Reserve Affairs) (ASN(M&RA)) is authorized to perform all functions of the SECNAV under [SECNAVINST 1402.1]

Plaintiff argues in this case that the Secretary's April 21, 2020 denial of LCDR Santana's special board request, as well as the Navy's underlying decision not to continue her on active duty when she was eligible for retirement within six years, are not supported and contain material errors. In addition, plaintiff has included a claim for disability retirement relief based on LCDR Santana's alleged post-traumatic stress disorder, which plaintiff claims arose from a sexual assault that took place while LCDR Santana was on active duty in Afghanistan. Plaintiff contends that the Navy's decision to discharge LCDR Santana without first evaluating or treating her for post-traumatic stress disorder following her alleged sexual assault was contrary to law.

Three motions are now pending before the court. First, the government moves to dismiss certain claims in the fourth amended and operative complaint on jurisdictional grounds. Def.'s Mot. for Partial Dismissal of the Compl. (Def.'s Mot. to Dismiss), ECF No. 55. Specifically, the government argues that the claim that the Navy improperly discharged LCDR Santana before evaluating or treating her alleged post-traumatic stress disorder is barred by the applicable six-year statute of limitations.[3]

---

except actions pertaining to general or flag officers or those the ASN(M&RA) deems appropriate to forward for the SECNAV's action.'").

[3]    The government also moves to dismiss several other claims in the fourth amended complaint. *See* Def.'s Mot. to Dismiss at 8 (arguing that the complaint "still includes allegations regarding the manipulation of medical records, violation of the First Amendment, sexual harassment and assault, sanitation, health and safety, deprivations of liberty and property, and discrimination."). In light of plaintiff's representations that she is pursuing only wrongful discharge claims, ECF No. 59 at 12, the court declines to address those issues. *See infra* Part IV.A.

Second, plaintiff moves for judgment on the administrative record, arguing that the Secretary's denial of special board review and the Navy's underlying decision not to continue LCDR Santana on active duty service were affected by "material error" and failed to consider the "totality of the circumstances" surrounding her discharge, including her sexual assault and post-traumatic stress disorder.  Pl.'s Opp'n to Def.'s Partial Mot. to Dismiss the Compl. and Mot. for J. on the Administrative R. (Pl.'s Opp'n & Cross-Mot.), ECF No. 59.  Plaintiff also argues that the Navy wrongfully discharged LCDR Santana without properly evaluating the medical implications of her reported sexual assault.

Third, the government cross-moves for judgment on the administrative record, arguing that this court may only review the Secretary's decision denying LCDR Santana's request for special board review and not the underlying non-continuation decision.  Def.'s Reply in Support of Mot. for Partial Dismissal of the Compl., Def.'s Resp. to Pl.'s Mot. for J. upon the Administrative R., and Def.'s Cross-Mot. for J. upon the Administrative R. (Def.'s Reply & Cross-Mot.), ECF No. 60.  The government further contends that the Secretary's denial of a special board is supported by the record and does not contain any material error, and thus the Secretary's decision should be affirmed.

As explained below, the court concludes that the claims and relief sought in connection with LCDR Santana's alleged post-traumatic stress disorder are new claims that do not "relate back" to the original complaint and must be dismissed for lack of jurisdiction as they fall outside the six-year statute of limitations period governing this

action.  Accordingly, the government's motion for partial dismissal of the complaint is **GRANTED**.

In addition, the court concludes that its review is limited to only the Secretary's April 21, 2020 decision denying special board review, not the Navy's underlying continuation decision.  Further, the court concludes that it may only set aside the Secretary's decision not to convene a special board if the court finds that the Secretary's decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law.  Based on the court's review of the record, the court concludes that the Secretary's decision denying a special board is not arbitrary or capricious, is supported by substantial evidence, and is not contrary to law.  The court therefore **GRANTS** the government's cross-motion for judgment on the administrative record and **DENIES** plaintiff's cross-motion for judgment on the administrative record.

## I.    REGULATORY BACKGROUND

Set forth below is the legal framework governing the decisions challenged in this case and the limits of the court's review of those decisions.

### A.    Promotion and Continuation Decisions

Once a naval officer reaches the rank of Lieutenant Commander, a selection board, known as a promotion board, must recommend any further promotions.  *See* 10 U.S.C. §§ 611(a), 628(k).  If a naval officer is twice passed over for promotion, the officer is typically subject to discharge.  *Id.* § 632(a).  An officer who has been passed over twice for promotion may nevertheless remain on active service if a separate board, called a

continuation board, selects the officer to continue. *Id.* § 611(b). The continuation board may do so "whenever the needs of the service require." *Id.*

Under Department of Defense regulations, an officer who has been twice passed over for promotion will normally be selected for continuation if the officer is within six years of retirement. *Baude v. United States*, 955 F.3d 1290, 1293-94 (Fed. Cir. 2020) (citing Department of Defense Instruction (DoDI) 1320.08 ¶ 6.3). However, a continuation board may decide not to continue an officer and to discharge the officer regardless of their retirement date "in unusual circumstances such as when an officer's official personnel record contains derogatory information." *Id.*; *see also* Sec'y of the Navy Instruction (SECNAVINST) 1920.7C ¶ 5(b) (Jan. 22, 2019).

The decisions of Navy promotion and continuation boards are subject to review within the Navy. The officer may seek review of a promotion board decision by the Secretary, and if the Secretary finds "material unfairness" in a promotion board's decision not to select an officer for promotion, the Secretary under 10 U.S.C. § 628 may convene a "special selection board" to determine whether the officer should be recommended for promotion. *Id.* § 628(b)(1). Similarly, when a continuation board decides not to continue an officer, the Secretary under 10 U.S.C. § 1558 has the authority to convene a "special board" to review the continuation board's decision. *Id.* § 1558(a)-(c).

Under 10 U.S.C. §§ 628 and 1558, the Navy was required to issue regulations governing the Secretary's review of an officer's request for review of promotion and continuation decisions. *See* §§ 628(j)(1), 1558(e)(1). When LCDR Santana filed the

6

pending case in 2016, the Navy had only issued regulations governing the review of promotion decisions under § 628. While this case was pending, in April 2019, the Navy promulgated regulations governing the Secretary's review of continuation board decisions under § 1558. *See* Def.'s App. Accompanying Def.'s Resp. to Pl.'s Mot. for J. Upon the Administrative R., and Def.'s Cross-Mot. for J. Upon the Administrative R. (DA) at 1-25.[4]

The 2019 regulations governing the Secretary's review of continuation board decisions state that the Secretary will convene a special board if the requesting officer demonstrates by a preponderance of the evidence that either "administrative error prevented consideration of an officer's record" or the continuation board "was precluded from a fair and impartial consideration of an officer's record due to a material error." DA at 21. An officer's request for a special board to review the continuation decision must also "demonstrate, by a preponderance of evidence, that the officer maintained reasonably careful records in order to ensure the completeness and accuracy of the officer's record prior to the convening of the board." DA at 24. Finally, an officer must request the Secretary's review of the continuation board's decision "no later than three years" after the decision by the continuation board was made public or the officer was notified of the results, or else the request will be denied as untimely. DA at 24-25.

---

[4]    The government's appendix of military regulations, defined above as DA, is contained in three docket entries, ECF Nos. 60-1 (DA1-DA64), 64-1 (DA65-DA117), and 72-1 (DA118-DA252).

Federal courts may review cases challenging continuation board decisions, but that review is limited.  Under 10 U.S.C. § 1558(f), a member of the military may not seek judicial relief from the decision of a continuation board until the Secretary has convened a special board to review that decision, or the Secretary has decided not to convene a special board. *Santana v. United States*, 732 F. App'x 864, 869 (Fed. Cir. 2017).  If the Secretary has decided not to convene a special board, the court may only set aside the Secretary's decision if it is "arbitrary or capricious;"  "not based on substantial evidence;"  "a result of material error of fact or administrative error; or" "otherwise contrary to law." 10 U.S.C. § 1558(f)(2)(A).  If the court sets aside the Secretary's decision not to convene a special board, it "shall remand the case to the Secretary concerned, who shall provide for consideration by a special board." *Id.* § 1558(f)(2)(B).

## B.   Review Before Disability Evaluation Board and Applications for Disability Retirement

An officer may be retired for disability where the Secretary determines that the officer "is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay."  10 U.S.C. § 1201(a); *see also Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005).  The Navy has also promulgated regulations "for evaluation of physical fitness for duty and disposition of physical disability."  *See* SECNAVINST 1850.4E (Apr. 30, 2002).  Under those regulations, the "disability evaluation system"—functioning primarily through physical evaluation boards—acts on behalf of the Secretary to make determinations about fitness for active duty, entitlement to disability benefits, and the disposition of members referred

for evaluation.  SECNAVINST 1850.4E ¶ 4(a).  Not all officers are referred to physical evaluation boards; officers will only be referred for evaluation "by a medical board that has found the member's fitness for continued naval service questionable by reason of physical or mental impairment."  SECNAVINST 1850.4E, encl. 3 § 3201; *see also* SECNAVINST 1850.4E, encl. 3 § 3202 (listing circumstances not justifying referral to an evaluation board, which includes members being processed for separation or retirement for reasons other than physical disability).

For a separated or retired officer to claim that she should have been referred to the Navy's disability evaluation system at the time of her discharge, the officer may apply for a correction of her military records before the Board for the Correction of Naval Records (BCNR).  SECNAVINST 1850.4E, encl. 2 § 2067 ("Members who have been separated or permanently retired may still petition the Board for Correction of Naval Records (BCNR)" for disability relief); *see also Chambers*, 417 F.3d at 1224-25 (overviewing process to be undertaken by servicemembers seeking disability retirement).  Where an officer was released from service without being evaluated by a disability evaluation board, filing an application before the BCNR is a mandatory predicate to filing an action for relief in federal court.  *Chambers*, 417 F.3d at 1225 ("[W]here the service member was released from service without a board hearing and subsequently files a claim for disability retirement before a military correction board . . . the Correction Board proceeding becomes a *mandatory* remedy; without it, the case in this court would be dismissed as premature . . . .") (internal citations and quotation marks omitted) (emphasis in original).

9

### C.    Review of Fitness Reports

When evaluating an officer for promotion or continuation, among the key records reviewed are fitness reports.  *See* DA at 85 (SECNAVINST 1420.1 ¶ 13d(6), which calls for "all pertinent records" to be submitted for board review "including fitness reports"). Fitness reports are prepared by the officer's reviewing officer and include both an evaluation of the officer's performance and a recommendation regarding further promotion and retention.  *See* Bureau of Naval Personnel Instruction (BUPERSINST) 1610.10E ¶ 1 (Dec. 6, 2019) (stating that "U.S. Navy Regulations, 1990, article 1129, requires that [FITREPs] be maintained on naval personnel 'which reflect their fitness for the Service and performance of duties'" and specifies that they "are the responsibility of the reporting senior who signs it").

An officer may take issue with a fitness report by petitioning the BCNR for correction on the grounds that correction is "necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a)(1).  Both the statute and its implementing regulations set a three-year time limit for challenging fitness reports, which begins after the officer discovers the "error or injustice" warranting relief.  *See* 10 U.S.C. § 1552(b) ("[n]o correction may be made under subsection (a)(1) unless the claimant (or the claimant's heir or legal representative) or the Secretary concerned files a request for the correction within three years after discovering the error or injustice"); *see also* SECNAVINST 5420.193, encl. 1 § 3(b) ("Applications for correction of a record must be filed within 3 years after discovery of the alleged error or injustice.").  Failure to adhere to this time limit may be excused where the reviewing board "finds it to be in the interests of justice,"

10 U.S.C. § 1552(b), but untimely applications "must set forth the reason why the Board should find it in the interest of justice to excuse the failure to file the application within the time prescribed," SECNAVINST 5420.193, enc. 1 § 3(b).

It is against this regulatory background that the court now turns to the facts of this case.

## II.   FACTUAL BACKGROUND

LCDR Santana served as an Environmental Health Officer in the Medical Service Corps of the Navy for seventeen years until her honorable discharge in 2011. In 2004, LCDR Santana was appointed to Lieutenant Commander. During her service, LCDR Santana complained about several health deficiencies at some of the bases where she served, including the improper operation of open air burn pits. *See* Administrative R. (AR) at 50-53, ECF No. 53.[5]

In March 2009 and March 2010, promotion boards were convened to consider LCDR Santana for promotion to Commander. Those promotion boards considered LCDR Santana's military record—which contained, among other things, LCDR Santana's fitness reports—and materials submitted for consideration by LCDR Santana. *See* DA at 84 (calling for the Secretary to issue a notice informing officers eligible for

---

[5]   The government filed the first administrative record in this case on October 31, 2018. *See* ECF No. 31. Following the court's two remand orders and the Secretary's final April 21, 2020 decision denying special board review, the government filed a revised administrative record. ECF No. 53. All of the citations to "AR" in this opinion refer to the revised administrative record.

promotion of their right to "communicate" with the promotion boards and to ensure that their military records are "substantially accurate and complete"); DA at 85-86 (calling for the Navy to supply "all pertinent records" to promotion boards, which must include "all documents, including fitness reports that [were] essential for a fair and substantially accurate and complete portrayal of [LCDR Santana's] career" as of their review); *see also Santana v. United States*, No. 14-689, Administrative R., ECF No. 18-8 at 39-61, 18-9 at 1-22 (materials submitted by LCDR Santana for consideration by the March 2010 promotion board and considered by the March 2010 promotion and continuation boards).[6]

LCDR Santana was passed over for promotion by both boards.  *See* AR at 128-30 (list noting that LCDR Santana was eligible, but not selected, for promotion in March 2010).  After she was not selected for promotion a second time in March 2010, and because she would be eligible for retirement within six years, a continuation board was convened to assess whether to LCDR Santana should remain on active duty.  *Santana*, No. 14-689, ECF No. 18-10 at 9 (continuation board results for LCDR Santana for FY-11).  Pursuant to SECNAVINST 1920.7B, the continuation board considered the same materials as the March 2010 promotion board.  *See* DA at 71 ("The provisions for promotion selection boards . . . regarding notice of convening, precept, membership, information furnished to the board, communication with selection boards and the

---

[6]     When referring to portions of the administrative record filed in *Santana*, No. 14-689, the court cites to the page numbers of the docket entry listed, not the bates numbers included.

proceedings are also applicable to continuation selection boards."); *see also Santana*, No.

14-689, ECF Nos. 18-5, 18-6, 18-7, 18-8, and 18-9 (file of records for 2010 promotion

and continuation boards). The continuation board decided not to continue LCDR Santana

on active duty. *Id.*, ECF No. 18-10 at 9 (Navy Bureau of Personnel webpage with

negative results of continuation board); ECF No. 18-10 at 16 (certificate of discharge

stating reason for discharge as failure to promote).

On December 7, 2010, the Navy determined that LCDR Santana was found

medically fit for discharge. *See* Ex. 1 to Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for J.

on the Administrative R. and Opp'n to Def.'s Mot. for J. on the Administrative R., ECF

No. 63-1. On January 1, 2011, LCDR Santana was honorably discharged. *Santana*, No.

14-689, ECF No. 18-10 at 16.

A.     **LCDR Santana's Fitness Reports (FITREPs)**

The promotion and continuation boards based their decisions on materials that

LCDR Santana submitted and on her military record, which included her FITREPs from

October 2007 through February 2010. *See* AR at 12-23 (FITREPs); *see also Santana*,

No. 14-689, ECF Nos. 18-5, 18-6, 18-7, 18-8, and 18-9 (file of records for 2010

promotion and continuation boards). LCDR Santana's FITREPs in 2007 were positive

and she was deemed "promotable" (though not "must promote" or "early promote"). *See,*

*e.g.*, AR at 22-23 (FITREP covering February 26, 2007 to October 31, 2007); 20-21

(FITREP covering November 1, 2007 to August 14, 2008). Her later FITREPs, however,

were less positive. In the FITREP covering August 15, 2008 to October 31, 2009, the

reviewing officer found that "LCDR Santana's inability to establish mutually beneficial

working relationships with those both senior and junior to her has impaired her effectiveness." AR at 19. Despite this, LCDR Santana was still ranked "promotable," but remained in the bottom half of her peer group. *Id.*

The FITREP covering May 1, 2009 to November 2, 2009, states that it was "[s]ubmitted on occasion of member's detachment due to loss of confidence and ability to perform assigned duties." AR at 17. The reviewing officer noted that LCDR Santana performed "below standards" in the areas of teamwork and leadership, that she "[l]ack[ed] ability to establish cooperative working environment," that her "[m]ission accomplishment and initiative skills [were] lacking," and that she "[l]ack[ed] ability to motivate or lead subordinates toward accomplishing goals." *Id.* at 16-17. The reviewing officer concluded that "LCDR Santana is not recommended for promotion or advancement to positions of higher responsibility" and ranked LCDR Santana as having "significant problems," the lowest ranking available. *Id.* at 17.

The next FITREP, which covered November 1, 2009 to February 28, 2010, indicated that LCDR Santana was continuing to perform "below standards" in the areas of teamwork and mission accomplishment and initiative (but was now "progressing" in the area of leadership). AR at 14-15. The reviewing officer noted that LCDR Santana's mission contributions "have been negligible," that LCDR Santana "[a]ctively resists and requires an inordinate level of oversight to complete valid mission requirements," and that she demonstrated an "[u]nrelenting fixation on personal administrative matters," which "left her little time for productive work." *Id.* at 15. The reviewing officer stated that, due to LCDR Santana's "confrontational interpersonal style and inability to

14

collaborate effectively she failed to complete the single project assigned to her" and that she "has failed to meet minimal expectations of an officer of her grade despite a disproportionate expenditure of time and energy by [] senior staff . . . to redirect her energies." *Id.* The reviewing officer concluded that "LCDR Santana is not recommended for promotion or retention" and again ranked her as having "significant problems." *Id.*

LCDR Santana petitioned to correct her adverse FITREPs before the BCNR. However, on December 17, 2009—between the March 2009 and March 2010 promotion boards—LCDR Santana submitted a complaint with the Department of Defense Inspector General, claiming that the adverse fitness reports she received amounted to reprisal because of alleged whistleblowing. *Santana*, No. 14-689, ECF No. 18-17 at 3-11. The Department of Defense Inspector General closed its investigation on June 30, 2010, concluding that there was "insufficient evidence" to warrant further inquiry into LCDR Santana's claims. *Id.*

On January 31, 2011, LCDR Santana submitted a complaint to the Navy Inspector General in which she repeated the same allegations she had made in her complaint before the Department of Defense Inspector General. *Santana*, No. 14-689, ECF No. 18-15 at 12-14 (report of LCDR Santana's complaint). The Navy Inspector General closed its investigation in September 2011 at the written request of LCDR Santana. *Id.*, ECF No. 18-14 at 2.

LCDR Santana submitted a request to the BCNR on January 5, 2011 seeking review of her discharge. *Id.*, ECF No. 18-10 at 7-8. In that request, LCDR Santana

asserted that she should have been continued on active duty service given her proximity to retirement and that the Navy otherwise erred in discharging her. *Id.* LCDR Santana's request did not seek correction of her adverse FITREPs. *Id.* On March 7, 2012, LCDR Santana voluntarily withdrew her request for BCNR review of her discharge, without any decision from the BCNR. *Id.*, ECF No. 18-10 at 4.

**B.     LCDR Santana's Allegations of Sexual Assault**

As noted above, LCDR Santana claimed that she was sexually assaulted while serving in Afghanistan. AR at 223-25 (LCDR Santana's statement regarding alleged assault); *see also* AR at 192-242 (records related to the Navy's investigation).

The Naval Criminal Investigative Services (NCIS) opened an investigation into LCDR Santana's alleged sexual assault on November 12, 2009. AR at 238, 241. The investigation was closed on June 2, 2010 for "lack of logical leads or suspects." AR at 218-19. In March 2012, NCIS reopened its investigation for the purpose of conducting interviews of potentially relevant persons that were not conducted during the initial investigation. AR at 216-17. After completing those interviews, the NCIS again closed its investigation citing LCDR Santana's "inability to identify or recognize any suspect, the incident not being reported to command personnel . . . , [and] no usable information being generated from screening interviews or other logical leads or suspects." AR at 192-94.

LCDR Santana claims that she did not receive any emotional or medical treatment under the Navy's victim assistance program, or a referral to the Navy's disability

evaluation system after she reported the assault.  4th Am. Compl. (FAC) ¶ 77, ECF No. 52.

## III.    PROCEDURAL HISTORY

### A.    LCDR Santana's First Military Pay Act Case, No. 14-689C

As noted above, LCDR Santana filed a first action in this court under the Military Pay Act on August 1, 2014, alleging that the Navy had improperly discharged her in reprisal for her whistleblowing actions (i.e., her complaints about the improper operation of open air burn pits).  *Santana*, No. 14-689, Compl. ¶¶ 172-74, ECF No. 1.  It was not disputed that LCDR Santana had started, but had not completed, the legal process for making whistleblower claims in the Navy.  *See* 10 U.S.C. § 1034 (the Military Whistleblower Protection Act); *see also Santana v. United States*, 127 Fed. Cl. 51, 59 (2016) (overviewing the administrative remedial scheme for retaliation claims contained in the Military Whistleblower Protection Act).

After briefing on cross-motions for judgment on the administrative record was completed, the government filed a notice stating its intent to argue that, to the extent LCDR Santana wanted to challenge the Navy's decisions not to promote or continue her, 10 U.S.C. §§ 628 and 1558 required LCDR Santana to first request that the Secretary convene a special selection board or a special board before bringing her claims in this court.  *Santana*, No. 14-689, ECF No. 48.  Three days later, on March 12, 2016, LCDR Santana filed a request to convene a special board to review the decision not to continue her service with the Secretary under § 1558.  AR at 487.  In her request she argued that

she was improperly discharged "based on improper fitness reports brought in reprisal for certain protected actions she took while on active duty." *Id.*

On June 9, 2016, the court issued its decision in LCDR Santana's first case. The court concluded that it did not have jurisdiction to review LCDR Santana's whistleblower retaliation claim. *Santana*, 127 Fed. Cl. at 59. The court further concluded that it could not review her wrongful discharge claims because she had not first sought review of her promotion and continuation decisions before the Secretary. *Id.* at 59-60. On August 3, 2016, LCDR Santana appealed this decision to the Federal Circuit. *Santana*, No. 14-689C, ECF No. 62.

## B.    LCDR Santana Files This Second Military Pay Case, No. 16-1703C

While her request for special board review pursuant to 10 U.S.C. § 1558 and her Federal Circuit appeal were pending, LCDR Santana filed this case on December 28, 2016. Compl., ECF No. 1. She alleged violations of the Military Pay Act based on the continuation board's decision not to continue her on active duty. *Id.* She did not challenge the promotion boards' decisions not to promote her to Commander. *Id.*

In the complaint, LCDR Santana sought to be returned to active duty "in the grade of O-4 [Lieutenant Commander] effective January 1, 2011, with back pay and allowances;" removal of the October 2009, November 2009, and February 2010 adverse FITREPs from her record; removal of all references to detachment for cause from her record; removal of all references of failure to select from her record; and, in the alternative, a return to active duty until eligible to retire and then a transfer to the retired list, with all back pay and allowances. *Id.* at 31.

18

On January 5, 2017, the court stayed the case pending the Federal Circuit's decision on her first case.  Order, ECF No. 7.

## C.    The Secretary Denies LCDR Santana's First Request for Special Board Review

While the Federal Circuit appeal was still pending, the Secretary on June 19, 2017 denied LCDR Santana's March 12, 2016 request to convene a special board to review the continuation board's decision not to continue her.  AR at 1408-10.  The Secretary interpreted LCDR Santana's request as one that sought review under both 10 U.S.C. § 1558 (to review her non-continuation decision) and 10 U.S.C. § 628 (to review her non-promotion decisions).  *Id.* at 1408.

As stated above, at the time of the Secretary's June 19, 2017 decision denying special board review, the Navy had only issued regulations implementing 10 U.S.C. § 628 (governing review of promotion decisions).  The Navy had not issued regulations to implement 10 U.S.C. § 1558 (governing review of continuation decisions).  For this reason, the Secretary applied the Navy regulations governing review of promotion decisions to both decisions.  In support of his decision not to revisit the promotion or continuation decisions, the Secretary found that LCDR Santana's request filed more than three years after the decisions were made public was untimely; that she presented no proof that "material unfairness" affected either decision; and that her allegations that her adverse FITREPs constituted reprisal were not supported and, accordingly, were "not a sufficient basis for disregarding the adverse personnel information in [her] file or for awarding [her] a Special Board."  AR at 1409.

### D.     The Federal Circuit Affirms the Dismissal of Santana's First Case

On November 22, 2017, the Federal Circuit affirmed this court's dismissal of

LCDR Santana's first case, No. 14-689C. *Santana*, 732 F. App'x at 864.  The Federal

Circuit did not reach this court's holding that it lacked jurisdiction over LCDR Santana's

whistleblower claim.  *Id.* at 871 n.4.  Instead, the Federal Circuit determined that "§

1558(f) bars a member of the military from seeking judicial relief from the decision of a

continuation board until the Secretary has convened a special board to review the

decision or has decided not to convene one."  *Id.* at 869.  Because LCDR Santana had not

requested or received a decision by the Secretary regarding special board review prior to

filing the complaint in her first case, the Federal Circuit concluded that she had not

exhausted her administrative remedies and that dismissal was warranted.  *Id.* at 870.

### E.     LCDR Santana Files the Second and Third Amended Complaints

Following the Federal Circuit's decision, this court lifted the stay of this case.  On

February 21, 2018, LCDR Santana filed a second amended complaint.  In addition to

challenging the continuation board's decision not to continue her, the complaint also

included a challenge to the Secretary's June 19, 2017 decision denying special board

review.  For the first time, LCDR Santana also included allegations that the Navy

wrongfully discharged her from active service due to "failure to treat her for post

traumatic stress an to refer her to the disability evaluation system."  2d Am. Compl. at 1,

ECF No. 13-1.

20

Like the original complaint, the second amended complaint sought removal of the adverse FITREPs from LCDR Santana's record and a return to active-duty effective January 1, 2011 with back pay and allowances.  In addition, the second amended complaint asked that LCDR Santana be "medically retired in pay grade O-4 effective January 1, 2011 with all back pay and allowances" and that the Secretary convene a special board pursuant to 10 U.S.C. § 1558.  *Id.* at 24.

On July 18, 2018, LCDR Santana died.  AR at 187.  On October 5, 2018, plaintiff, acting on behalf of LCDR Santana, filed a third amended complaint acknowledging LCDR Santana's death.  3d Am. Compl., ECF No. 28.

### F.    The Court Twice Remands the Denial of Special Board Review

On November 21, 2018, the government moved for a voluntary remand to permit another review of LCDR Santana's request for a special board following the Navy's anticipated issuance of implementing regulations for 10 U.S.C. § 1558 (which did not exist when her initial request was denied on June 19, 2017).  Def.'s Mot. for Voluntary Remand, ECF No. 32.  Following oral argument, on December 18, 2018, this court granted the motion and ordered that the government "rescind its June 2017 decision, and . . . issue a new decision in accordance with [N]avy regulations to be promulgated pursuant to 10 U.S.C. § 1558."  Order, ECF No. 36.

In April 2019, the Navy issued implementing regulations for § 1558 under SECNAVINST 1402.1.  *See* DA at 1-25.  On May 31, 2019, plaintiff submitted to the Secretary a new request for a special board pursuant to § 1558 and SECNAVINST 1402.1.  AR at 35-49.  Plaintiff "specifically" requested that the "special board . . .

consider whether there was a material error at [LCDR Santana's] continuation board."
AR at 35.  Plaintiff argued that LCDR Santana's adverse FITREPs amounted to reprisal
and that LCDR Santana was effectively detached for cause.  *Id.* at 37-48.  Plaintiff further
contended that LCDR Santana was "separated without benefit of the disability evaluation
system despite the foreseeable post traumatic stress" that resulted from being sexually
assaulted while on duty.  *Id.* at 48-49.  Plaintiff also argued that, contrary to the policy of
the Navy's Sexual Assault Victim Intervention Program, the Commander, Navy
Personnel Command did not review the decision not to continue LCDR Santana prior to
her discharge.  *Id.* at 49.

In December 2019, the Navy denied plaintiff's May 31, 2019 request for special
board review.  AR at 1359-63.  However, on January 31, 2020, the court granted a second
request for voluntary remand of that denial in light of the Secretary's failure to consider
the supplemental arguments proffered by plaintiff.  Order, ECF No. 47.

On April 21, 2020, the Secretary issued his final decision denying plaintiff's May
31, 2019 request to convene a special board pursuant to 10 U.S.C. § 1558.  AR at 1-6.
The Secretary based the denial on three independent grounds.  First, the Secretary stated
that plaintiff's request was untimely because it was submitted more than three years after
LCDR Santana learned of the non-continuation decision.  *Id.* at 4-5, 6.  Second, the
Secretary stated that plaintiff's request failed to detail any steps LCDR Santana took to
ensure the accuracy of her record—including the accuracy of her adverse FITREPs—
before the continuation board made its decision.  *Id.* at 5-6.  Third, the Secretary stated
that plaintiff had not shown by a preponderance of the evidence that the decision of the

continuation board was affected by material error.[7]  *Id.*  Specifically, the Secretary determined that the adverse FITREPs considered by the continuation board properly remained in LCDR Santana's record, either because she had not challenged them or because such challenges were rejected as meritless.  *Id.*  Accordingly, the Secretary concluded that, contrary to plaintiff's arguments, the continuation board's consideration of the adverse FITREPs was not a material error.  *Id.*

The Secretary also determined that, absent evidence to the contrary, Navy officials are afforded a strong presumption of regularity in their actions, AR at 2, and that "evidence supports that FITREPs were properly completed," reviewed, and accepted in accordance with Navy regulation and policy.  AR at 5-6.  The Secretary did not expressly address plaintiff's claim that the Navy had erred by not referring LCDR Santana to the disability evaluation system and by failing to treat LCDR Santana's post-traumatic stress, but stated that these issues were not "germane" to the request for special board review of the non-continuation decision.  AR at 4.  The Secretary also noted that the Navy had conducted and closed an investigation into LCDR Santana's sexual assault allegations. *Id.*

---

[7]     The Navy also affirmed its June 2017 decision rejecting LCDR Santana's request for review of its decisions not to promote her pursuant to 10 U.S.C. § 628.  AR at 6. LCDR Santana does not challenge the § 628 decision in any of her complaints.

**G.    Plaintiff Files the Operative Complaint and the Parties Brief the Pending Motions**

On June 12, 2020, plaintiff filed a fourth amended complaint in this case, challenging the Navy's non-continuation decision, the Secretary's final April 21, 2020 denial of special board review, and the Navy's failure to treat LCDR Santana's post-traumatic stress disorder or refer LCDR Santana to the Navy's disability evaluation system.  *See generally* FAC.  Like the second and third amended complaints, the fourth amended complaint sought medical retirement with all back pay and allowances; removal of the adverse FITREPs from LCDR Santana's record; review by a special board pursuant to 10 U.S.C. § 1558; and, alternatively, a return to active duty with back pay and allowances until eligible for retirement and a subsequent transfer to the retired list until the date of LCDR Santana's death.  *Id.* at 25.  The fourth amended complaint is the operative complaint.

The Navy then filed the administrative record and briefing commenced.  Briefing was completed on November 23, 2020, and the court held oral argument on March 22, 2021.  Following oral argument, the court ordered supplemental briefing on the applicability of Chief of Naval Operations Instruction (OPNAVINST) 1752.1B, the Sexual Assault Victim Intervention (SAVI) Program, to the Secretary's decision.  *See* ECF No. 69.  Supplemental briefing was completed on June 1, 2021.  *See* ECF Nos. 72, 75.

IV.   **DISCUSSION**

The Military Pay Act provides this court jurisdiction over wrongful discharge claims seeking back pay and allowances and related equitable relief, including equitable relief under 10 U.S.C. § 1558.  *Baude v. United States*, 137 Fed. Cl. 441, 449 (2018), *rev'd on other grounds*, 955 F.3d 1290 (Fed. Cir. 2020).  However, the government argues here that certain claims raised in plaintiff's operative complaint should be dismissed because they are untimely or are unrelated to plaintiff's wrongful discharge claims and otherwise fall outside of the court's jurisdiction.  The court will first address the government's motion to dismiss these claims and will then turn to the parties' cross-motions for judgment on the administrative record.

A.     **The Government's Motion to Dismiss**

The operative complaint contains allegations regarding the manipulation of medical records, violations of the First Amendment, sexual harassment and assault, sanitation, health and safety, deprivations of liberty and property, and discrimination.  To the extent plaintiff is asserting any claims regarding these allegations, the government argues in its motion to dismiss that these claims are not independently money-mandating and are thus outside the jurisdiction of this court or, in the alternative, fail to state a plausible claim.  *See* Def.'s Mot. to Dismiss at 5-9; *see also supra* n.3.  In response, plaintiff states that she did not intend for these allegations to raise independent legal claims.  *See* Pl.'s Opp'n & Cross-Mot. at 12-13 (stating that "no whistleblower claims, if they ever existed, survived" the court's opinion dismissing LCDR Santana's initial case and that, aside from the claims rooted in LCDR Santana's alleged wrongful discharge,

"there are no other claims within the four corners of the complaint"). Given plaintiff's concession, the court does not address this portion of the government's motion to dismiss.

In addition to the foregoing, the government moves to dismiss plaintiff's claim for disability retirement based on allegations of the Navy's failure to evaluate or treat LCDR Santana for post-traumatic stress disorder stemming from her alleged sexual assault. Def.'s Mot. to Dismiss at 2-4. The government argues that, because the claim for disability retirement based on post-traumatic stress disorder was raised for the first time in the second amended complaint filed on February 21, 2018, it was filed more than six years after LCDR Santana's discharge and is thus time barred under 28 U.S.C. § 2501.

Claims brought before this court based on the Tucker Act are barred as untimely unless they are filed "within six years after such claim first accrues." 28 U.S.C. § 2501. The Tucker Act's six-year statute of limitations is a jurisdictional requirement. *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1354 (Fed. Cir. 2006), *aff'd*, 552 U.S. 130 (2008). Military pay claims accrue upon discharge, which for LCDR Santana was January 1, 2011. *See MacLean v. United States*, 454 F.3d 1334, 1336 (Fed. Cir. 2006) (quoting *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003)). There is no dispute that allegations related to LCDR Santana's alleged post-traumatic stress disorder and claims for disability retirement were raised for the first time in the February 21, 2018 second amended complaint, which was filed outside the statute of limitations period. Therefore, unless the post-traumatic stress disorder related claims relate back to

allegations in the original complaint, the claims for relief based on LCDR Santana's alleged post-traumatic stress disorder must be dismissed.

To "relate back," the operative facts in the original complaint must have put the government on notice of the claims related to LCDR Santana's alleged post-traumatic stress disorder. *See* RCFC 15(c)(1)(B) (allowing for "relation back" where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading"); *see also Anza Tech., Inc. v. Mushkin, Inc.*, 934 F.3d 1359, 1368 (Fed. Cir. 2019) (explaining that Rule 15(c)(1)(B)'s requirements seek to ensure that "a party who has been notified of litigation concerning a particular occurrence has been give[n] all the notice that statutes of limitations were intended to provide.") (quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984)).  When assessing whether the original complaint put a party on notice of claims raised more specifically in later amendments, the Federal Circuit uses the "logical relationship standard," which asks "whether the facts underlying the alleged claims 'share an aggregate of operative facts.'"  *Anza Tech., Inc.*, 934 F.3d at 1369 (quoting *In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012)).  "[A]t bottom," the court must ask "whether the general factual situation or the aggregate of operative facts underlying the original claim for relief gave notice to [the defendant] of the nature of the allegations it was being called upon to answer."  *Id.* at 1369-70.

The government argues that LCDR Santana's original December 28, 2016 complaint challenged only "the deprivation of pay caused by [LCDR Santana's] discharge which was based upon her non-continuation and the refusal of the Secretary of

the Navy to restore her to active duty," Compl. at 1, and did not put the government on notice of her claim that the Navy wrongfully discharged her when it failed to treat or evaluate her alleged post-traumatic stress disorder, Def.'s Mot. to Dismiss at 4. Plaintiff argues that the allegations about the Navy's failure to evaluate or treat LCDR Santana's post-traumatic stress disorder "relate back" to the claims raised in the original complaint under RCFC 15(c) because these allegations also arise from the "wrongful discharge cause of action." [8] Pl.'s Opp'n & Cross-Mot. at 9-10; *see also* Oral Arg. Transcript (Tr.) at 4:2-10, ECF No. 68. (arguing that allegations about fitness for discharge and post-traumatic stress are "issues flowing from the original claim" of wrongful discharge). The court agrees with the government.

To begin, while both part of the discharge process, the Navy's non-continuation decision (upheld by the Secretary) and the Navy's decision deeming LCDR Santana fit for discharge are different military determinations made at different times pursuant to different statutes and regulations. At the time of LCDR Santana's discharge, non-continuation decisions were governed by 10 U.S.C. § 637, the statute permitting officers subject to discharge or retirement for failure to be selected for promotion to be continued

---

[8]      Plaintiff also argues that because both the government and this court agreed to LCDR Santana filing a second amended complaint, the court has somehow accepted that the allegations regarding LCDR Santana's fitness for discharge "relate back" to the original complaint and are accordingly timely. The court disagrees. The court has never held that the new claim relates back to LCDR Santana's original complaint and, as the government correctly argues, satisfying the six-year statute of limitations set forth in 28 U.S.C. § 2501 is a jurisdictional prerequisite to bringing a claim before this court, which is not subject to waiver and may be raised at any time. *See John R. Sand & Gravel Co.*, 552 U.S. at 133-34; RCFC 12(h).

on active duty, along with both SECNAVINST 1920.7B, which established the policies and procedures that governed the Naval continuation boards making those decisions and DoDI 1320.8, which established the policies and procedures that governed continuation of all military officers.  In contrast, decisions related to disability retirement were governed by 10 U.S.C. § 1201, the statute permitting the Secretary to retire members who are "unfit to perform" their duties because of a disability incurred while serving, and SECNAVINST 1850.4E, which established the policies and procedures for evaluating physical disabilities.

The two decisions involve different factual predicates and administrative records—one related to an officer's performance as an officer, and the other related to an officer's health.  *Compare Philippeaux v. United States*, No. 20-275, 2020 WL 7042908 at \*4 (Fed. Cl. Dec. 1, 2020) (addressing allegation that the Navy improperly discharged officer without a permanent disability designation by reviewing physical evaluation boards and disability evaluation system counselors (among others) to determine whether the officer was physically able to "perform the duties of his office, grade, rank, or rating in such a manner as to reasonably fulfill the purpose of his employment on active duty") *with Santana*, No. 14-689, ECF Nos. 18-5, 18-6, 18-7, 18-8, and 18-9 (records presented before the promotion and continuation boards for review, including fitness reports, medals, and commendations documenting LCDR Santana's job performance throughout her career).  The two decisions also have different administrative review procedures and exhaustion requirements.  *Compare* 10 U.S.C. § 1558 (calling for challengers to non-continuation decisions to petition the Secretary to convene a special board to review

before petitioning for judicial review) *with* 10 U.S.C. § 1552 (calling for challengers of disability determinations to petition the Secretary to convene a board to consider whether it is necessary to "correct any military record . . . to correct an error or remove an injustice"), § 1553 (calling for challengers of discharges or dismissals to file a motion or request for review with the Secretary).

The original complaint also lacks the "operative facts" that would support plaintiff's claim for disability retirement.  Although the original complaint references LCDR Santana's sexual assault allegations, Compl. ¶¶ 98-106, 118, 120, 131, 136, 147, 152, it did not include facts that would have put the Navy on notice that it would have to answer claims asserting that LCDR Santana should have been discharged on a disability as a result.  For example, the original complaint does not include any allegations about a post-traumatic stress condition, the Navy's disability evaluation system, or LCDR Santana's fitness for discharge.  Indeed, there are no allegations disputing the Navy's conclusion that LCDR Santana was fit for discharge.  Instead, the original complaint contained facts that contradict a claim based on post-traumatic stress disorder, stating that, when discharged, LCDR Santana "was given a clean bill of psychiatric health" in support of the argument that LCDR Santana should be restored to active duty.  Compl. ¶ 153-54.

The original complaint also does not include any request for relief related to LCDR Santana's alleged post-traumatic stress disorder such as placement on disability retirement.  Compl. at 31 (seeking reinstatement to active duty with back pay and allowances, removal of certain items from her military record, and costs).  This request

for relief is included for the first time in the second amended complaint, which was filed outside of the statute of limitations period. *See* 2d Am. Compl. at 1, ECF No. 13-1 (stating that lawsuit is "brought solely because of the deprivation of pay caused by the plaintiff's discharge which was based upon her non-continuation . . . *and for the improper discharge from the active service due to failure to treat her for post traumatic stress an to refer her to the disability evaluation system*") (emphasis added); 24 (seeking medical retirement in pay grade O-4 effective January 1, 2011 with all back pay and allowances).

Given these facts, the court concludes that there is not a logical relationship between the allegations in the original complaint and the second amended complaint that would have put the government on notice of the later-raised claims related to post-traumatic stress disorder and disability retirement. Accordingly, claims related to LCDR Santana's alleged post-traumatic stress and for disability retirement do not "relate back" to the original complaint. *See Geospatial Tech. Assoc., LLC v. United States*, No. 16-346C, 2019 WL 6712094 at *7, n.5 (Fed. Cl. Nov. 5, 2019) (concluding that claims raised for the first time in amended complaint should not relate back to the original where such claims were "based upon newly alleged conduct and may involve different evidence than the evidence required to resolve" claims raised in the original complaint). Those claims, raised for the first time in plaintiff's February 21, 2018 complaint, are therefore untimely and must be dismissed for lack of jurisdiction. *John R. Sand & Gravel Co*, 457 F.3d at 1355. Accordingly, the government's motion for partial dismissal is granted.

This leaves two of plaintiff's claims before the court: (1) that the continuation board's decision not to continue LCDR Santana was arbitrary, capricious, not based on substantial evidence, a result of material error of fact or material administrative error, or otherwise contrary to law; and (2) that the Secretary's most recent decision to deny special board review of the continuation board's decision was similarly problematic. The court now turns to the parties' cross-motions for judgment on the administrative record, which address these two remaining claims.

**B.    The Cross-Motions for Judgment on the Administrative Record**

The parties' cross-motions for judgment on the administrative record, ECF Nos. 59 and 60, involve the Navy's actions surrounding LCDR Santana's non-continuation and discharge, culminating in the Secretary's denial of special board review under 10 U.S.C. § 1558. The Federal Circuit has held that courts will not disturb a § 1558 decision "denying a special board to correct the decision of a [continuation board] 'unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence.'" *Baude*, 955 F.3d at 1298 (quoting *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010) and 10 U.S.C. § 1558(f)(2)(A)(i)-(iv)).

**1.    The Scope of the Court's Review under 10 U.S.C. § 1558 is Limited to the Secretary's Decision Not to Convene A Special Board.**

As an initial matter, the parties dispute the scope of this court's review under 10 U.S.C. § 1558. Plaintiff challenges *both* the continuation board's decision and the Secretary's decision denying special board review under § 1558. Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for J. on the Administrative R. and Opp'n to Def.'s Mot. for J. on the

Administrative R. (Pl.'s Reply & Opp'n), ECF No. 63 at 4-5; *see also* Pl.'s Reply & Opp'n at 5-10 (arguing that the continuation board's decision is arbitrary, capricious, unsupported by substantial evidence, and otherwise contrary to law). The government argues that this court may only review the Secretary's decision not to convene a special board. Def.'s Reply & Cross-Mot. at 19-21. For the reasons set forth below, the court agrees with the government that it may only review the Secretary's decision not to convene a special board. While review of the Secretary's decision necessarily involves consideration of the continuation board's decision, the court may not, as discussed below, separately review the continuation board's decision under the applicable statute.

When read as a whole, § 1558(f) only permits the court to review the Secretary's decision. *See Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1342 (Fed. Cir. 2021) ("The meaning of statutory language, plain or not, thus depends on context.") (quoting *Barela v. Shinseki*, 584 F.3d 1379, 1382-83 (Fed. Cir. 2009)). Under 10 U.S.C. § 1558(f)(1)

> A person seeking to challenge an action or recommendation of a selection board, or an action taken by the Secretary of the military department concerned on the report of a selection board, is not entitled to relief in any judicial proceeding unless the action or recommendation has first been considered by a special board under this section or the Secretary concerned has denied the convening of such a board for such consideration.

10 U.S.C. § 1558(f)(1). The following subsection—10 U.S.C. § 1558(f)(2)—discusses what courts are permitted to do when faced with a decision denying special board review. The statute specifically permits courts to "review a determination by the Secretary of a military department *not* to convene a special board in the case of any person" and permits

reversal where the determination not to convene a special board is arbitrary or capricious, not based on substantial evidence, a result of a material error of fact or material administrative error, or is otherwise contrary to law. 10 U.S.C. § 1558(f)(2)(A) (emphasis added). The statute then states that where a court "sets aside a determination by the Secretary of a military department not to convene a special board, *it shall remand the case to the Secretary concerned*, who shall provide for consideration by a special board." 10 U.S.C. § 1558(f)(2)(B) (emphasis added). In short, the statute allows this court to review and set aside decisions by the Secretary denying special board review under 10 U.S.C. § 1558 and directs this court to remand any decisions set aside for mandatory consideration by a special board. The statute does not permit this court to separately review and overturn the underlying non-continuation decision.

This reading is supported by the Federal Circuit's decision in *Santana*. There, the Federal Circuit concluded that LCDR Santana's judicial challenge of the non-continuation decision was premature because it had been brought before she had exhausted the administrative remedies outlined in § 1558. *Santana*, 732 F. App'x at 870. The Federal Circuit noted that under § 1558(f)'s judicial review scheme, it is the "decision of a special board, or the Secretary's determination not to convene a special board," that "is subject to judicial review." 732 F. App'x at 869.

Plaintiff's arguments challenging the limits of this court's review do not compel a different result. First, plaintiff argues that this reading of 10 U.S.C. § 1558(f)'s plain language is "absurd" as it empowers the Navy to "circumvent the underlying actions coming to the board by simply refusing to convene it." Pl.'s Reply & Opp'n at 4. The

court disagrees.  If the Secretary does not convene a special board, the court is tasked with determining whether the Secretary's determination is supported or if the continuation decision should be reviewed by a special board.  This necessarily requires the court to examine the underlying non-continuation decision and the Secretary's review of that decision.  If the court determines that the Secretary's decision is not supported or is contrary to law, the court is authorized to order the Secretary to convene a special board to review and possibly correct a non-continuation decision.  10 U.S.C. § 1558(f)(2)(A)-(B).  The court may also review the decision by a special board or an action of the Secretary taken on the report of a special board, and may set aside that recommendation or action.  10 U.S.C. § 1558(f)(3).  For these reasons, plaintiff's claim that the government's reading of the statute could lead to the Navy circumventing judicial review of a non-continuation decision is without merit.

Second, plaintiff argues that the government's reading does not comport with the plain language of 10 U.S.C. § 1558(f)(1).  That subsection states that officers challenging non-continuation decisions are "not entitled to relief in any judicial proceeding unless the action or recommendation has first been considered by a special board under this section or the Secretary concerned has denied the convening of such a board for such consideration."  10 U.S.C. § 1558(f)(1).  Plaintiff posits that the use of "or" in this subsection suggests that this court has discretion to review a non-continuation decision where either a special board has refused to act on that decision or the Secretary denies a request to convene one.  Pl.'s Reply & Opp'n at 4-5.  Based on the larger statutory context, however, this court disagrees with plaintiff's reading.  The court acknowledges

that 10 U.S.C. § 1558(f)(1) permits judicial review when either a special board is convened but does not revise the non-continuation decision or when the Secretary declines to convene a special board at all.  The following subsections, however, explain the limited parameters of the court's review.  Relevant here, 10 U.S.C. § 1558(f)(2)(A) permits judicial review of the Secretary's decision not to convene a special board, and 10 U.S.C. § 1558(f)(2)(B) precisely outlines what a court may do when it finds that such a decision must be reversed:  remand the matter to the Secretary with instructions that the non-continuation decision be reviewed by a special board.  *See Santana*, 732 F. App'x at 869 (holding that "the decision of a special board or the Secretary's determination not to convene a special board, is subject to judicial review," citing the standards of § 1558(f)(2)-(3)).  When read as a whole, therefore, the statute does not permit the court to review the non-continuation decision separately from its review of the Secretary's decision.

Because the court may not separately review the continuation board's decision, only one claim remains before the court, namely whether the Secretary's April 21, 2020 decision to deny special board review was arbitrary, capricious, contrary to law, or unsupported by substantial evidence.  The court now turns to that claim.

### 2.    The Secretary's Decision Is Not Arbitrary, Capricious, Unsupported by Substantial Evidence, or Contrary to Law.

The Secretary's decision is governed by the Navy's April 2019 implementing regulations issued pursuant to § 1558.  Among other things, the regulations call for an officer to demonstrate three things.  First, the requesting officer must demonstrate by a

preponderance of the evidence that either "administrative error prevented consideration of an officer's record before a board" or the continuation board "was precluded from a fair and impartial consideration of an officer's record due to a material error." DA at 21. Second, the officer must "demonstrate, by a preponderance of the evidence, that the officer maintained reasonably careful records in order to ensure the completeness and accuracy of the officer's record prior to the convening of the board." DA at 24. Finally, an officer must file the request with the Secretary for special board review "no later than three years" after the continuation board's decision was made public or the officer was notified of the decision, or else the request will be denied as untimely. DA at 24-25.

Here, the Secretary denied plaintiff's request for a special board on the grounds that plaintiff failed to meet all three of these regulatory requirements. First, the Secretary concluded that plaintiff's petition was untimely because it was submitted more than three years after LCDR Santana was informed of the continuation board's decision. AR at 6. Second, the Secretary found that the request failed to detail any steps taken to ensure the accuracy of LCDR Santana's FITREPs prior to the 2010 continuation board convening. *Id.* Third, the Secretary concluded that plaintiff failed to show by a preponderance of the evidence that the continuation board's decision was affected by any material error. *Id.* In reviewing this decision, the court under § 1558 will set aside the Secretary's determination only if it is arbitrary or capricious, not based on substantial evidence, or contrary to law. 10 U.S.C. § 1558(f)(2)(A).

Plaintiff challenges the Secretary's denial of special board review by arguing: (1) the Secretary improperly applied the implementing regulations passed in April 2019 in

evaluating plaintiff's latest request for a special board as those regulations did not exist in 2016, when LCDR Santana originally requested a special board; and (2) even if the April 2019 regulations were properly applied, the Secretary's decision to uphold the continuation board's decision was arbitrary and capricious, not supported by the record, and contrary to law. The court addresses these arguments in turn.

First, the court agrees with the government that the Secretary properly applied the April 2019 implementing regulations in evaluating the request for special board review. The court expressly ordered on remand that the Secretary use the April 2019 implementing regulations and vacated the Secretary's earlier decisions that did not use these regulations. *See* Order, ECF No. 36. By court order, therefore, the April 2019 regulations applied.[9] In addition, plaintiff's most recent request for special board review, submitted a month after the April 2019 regulations were passed, did not ask the Secretary to waive any of the requirements imposed by the April 2019 regulations. *See* AR at 35-49. By not raising this issue at the administrative level, plaintiff has waived it here. *See Metz v. United States*, 466 F.3d 991, 999 (Fed. Cir. 2006) ("The failure to raise an issue at the administrative level waives the right to appellate review of that issue.") (quoting *Sw. Bell Tel. Co. v. Pub. Util. Comm'n*, 208 F.3d 475, 487 (5th Cir. 2000)).

---

[9]     The court notes that plaintiff opposed the Navy's motion to remand this case to the Secretary. *See* Pl.'s Opp'n, ECF No. 33. Plaintiff proffered two arguments in opposition: (1) the governing statute, 10 U.S.C. § 1558, did not provide for reconsideration of the Secretary's denial of special board review; and (2) the government's request was not ripe as the implementing regulations for 10 U.S.C. § 1558 had not yet been approved and promulgated. *Id.* at 2-3. Plaintiff did not argue that the implementing regulations, if issued, should not apply to the request for a special board.

Having found that the 2019 regulations apply, the court agrees with the government that the Secretary's denial of special board review may be upheld independently on each of the three grounds addressed by the Secretary—untimeliness, lack of evidence or explanation of adequate record keeping, and insufficient evidence of material error in the continuation board's decision.

To begin, the court agrees with the government that the Secretary's conclusion that plaintiff's request for special board review was untimely was not arbitrary, capricious, unsupported by substantial evidence, or contrary to law. Plaintiff's May 31, 2019 request was undisputedly filed more than three years after LCDR Santana learned of the non-continuation decision, as was the original request filed on March 12, 2016.[10] Plaintiff claims that imposing a three-year limitation is unfair. *See, e.g.*, Pl.'s Opp'n & Cross Mot. at 34-36. However, as discussed above, plaintiff did not object to the three-year limitations period in the most recent request for special board review filed before the Secretary, and thus the objection has been waived. *See* AR at 35-49 (May 31, 2019 request for special board review); *see also Metz*, 466 F.3d at 999.

The court also agrees with the government that the Secretary's conclusion that plaintiff did not show that LCDR Santana maintained reasonably careful records was not arbitrary, capricious, unsupported by substantial evidence, or contrary to law. Plaintiff's most recent request for special board review did not detail any steps that LCDR Santana

---

[10]     The Secretary in his 2017 decision found that LCDR Santana's original 2016 request, filed five years after her discharge, was untimely. *See* AR at 1408-10.

took to ensure the accuracy of her records prior to the 2010 continuation board, as required by the implementing regulations. *See* AR at 35-49. In addition, in none of plaintiff's filings before this court does plaintiff explicitly challenge this aspect of the Secretary's decision.

Indeed, as the Secretary correctly states in his decision, the record demonstrates that LCDR Santana's efforts to correct her adverse FITREPs before and after the continuation board convened were either unsuccessful or voluntarily withdrawn. *See* AR at 6 ("LCDR Santana's reprisal complaint was investigated and determined to be unsubstantiated by the Navy IG and she later withdrew her BCNR petition."). Specifically, LCDR Santana challenged her adverse FITREPs before the Department of Defense Inspector General in 2009, before the 2010 continuation board convened, on the grounds that her adverse FITREPs were issued in retaliation to her challenges of the Navy's improper operation of open air burn pits. The Department of Defense Inspector General's investigation was closed after it concluded that it could not find sufficient evidence to support LCDR Santana's retaliation claim. *See Santana*, No. 14-689, ECF No. 18-17 at 3-11. Following the 2010 continuation decision, LCDR Santana challenged her adverse FITREPs before the Navy Inspector General and challenged her discharge before the BCNR, but both challenges were voluntarily withdrawn. *Id.*, ECF No. 18-15 at 12-14 (report of complaint submitted to the Navy Inspector General alleging that her adverse FITREPs amounted to reprisal); ECF No. 18-14 at 2 (letter informing LCDR Santana that Navy Inspector General closed its investigation into her reprisal allegations at her request); ECF No. 18-10 at 7-8 (application for correction of records filed with the

BCNR seeking reinstatement following wrongful discharge); ECF No. 18-10 at 4 (letter withdrawing application before the BCNR).

In view of the foregoing, the Secretary's conclusion that plaintiff failed to document her efforts to ensure the accuracy of LCDR Santana's records is well-supported and does not provide a basis for setting aside the Secretary's decision.

Finally, the court concludes that the Secretary's decision not to convene a special board on the grounds that plaintiff failed to show a material error in the continuation board's decision is supported and thus must be affirmed. While it is true, as plaintiff argues, that officers within six years of retirement "shall normally be selected for continuation," continuation boards may elect not to continue officers "in unusual circumstances such as when an officer's official personnel record contains derogatory information." *Baude*, 955 F.3d at 1293-94 (quoting DoDI 1320.08 ¶ 6.3)). Here, the Secretary reasonably relied on the adverse FITREPs in LCDR Santana's record to conclude that there was no evidence of material error in the continuation board's decision not to continue her on active duty. *See* AR at 5-6; *see also* AR at 16-17 (FITREP covering May 1, 2009 to November 2, 2009, stating that LCDR Santana performed "below standards" in the areas of teamwork and leadership, that she "[l]ack[ed] ability to establish cooperative working environment," that her "[m]ission accomplishment and initiative skills [were] lacking," and that she "[l]ack[ed] ability to motivate or lead subordinates toward accomplishing goals."); AR at 14-15 (FITREP covering November 1, 2009 to February 28, 2010, stating that LCDR Santana performed "below standards" in the areas of teamwork and mission accomplishment and initiative and that due to LCDR

41

Santana's "confrontational interpersonal style and inability to collaborate effectively, she failed to complete the single project assigned to her" and that she "has failed to meet minimal expectations of an officer of her grade despite a disproportionate expenditure of time and energy by [] senior staff . . . to redirect her energies").  This final FITREP specifically stated that "LCDR Santana is not recommended for promotion or retention." AR at 15

To the extent plaintiff challenges the accuracy of these FITREPs before this court, that challenge is unavailing.  As stated above, LCDR Santana's attempts to challenge the accuracy of these records before the Navy were either unsuccessful or voluntarily abandoned.  *Santana*, No. 14-689, ECF No. 18-17 at 2 (letter from Department of Defense Inspector General informing LCDR Santana that there was "insufficient evidence of reprisal to warrant further inquiry" into her allegations in light of her adverse FITREPs and closing her case); ECF No. 18-14 at 2 (letter informing LCDR Santana that Navy Inspector General closed its investigation into her February 2011 reprisal allegations at LCDR Santana's request).  In such circumstances, the FITREPs were properly maintained in LCDR Santana's record and the Secretary reasonably relied on them in deciding not to convene a special board.  Based on these FITREPs, the Secretary found that there was derogatory information in LCDR Santana's military record that justified non-continuation, including her final FITREP, which expressly stated that LCDR Santana should not be retained in the Navy.  *See* AR at 14-15.  As such, the Secretary's decision that the continuation board did not make a material error based on LCDR Santana's record is supported and under § 1558(f) must be upheld.

Plaintiff's arguments that the Secretary ignored other "material errors" in the continuation board decision are without merit.  First, plaintiff argues that the continuation board violated controlling regulations when it failed to notify the Secretary of Defense of the bases of its non-continuation decision.  *See* Pl.'s Opp'n & Cross-Mot. at 18-19 (citing DoDI 1320.08 and SECNAVINST 1920.7B).  Contrary to plaintiff's arguments, however, that requirement was no longer in effect when LCDR Santana was not continued in 2010, and thus cannot serve as a basis for finding a material error.  *Compare* DA at 28, Dep't of Defense Directive 1320.8 ¶ 4.3 (Dep't of Defense Oct. 21, 1996) ("The Secretaries of the Military Departments concerned may, in unusual circumstances, discharge involuntarily such officers in accordance with Section 632 of reference (b) *after notifying the Secretary of Defense of the rationale for this action*.") *with* DA at 37, Dep't of Defense Directive 1320.08 ¶ 6.3.1 (Dep't of Defense March 14, 2007) ("The Secretary of the Military Department concerned may, in unusual circumstances such as when an officer's official personnel record contains derogatory information, discharge an officer involuntarily in accordance with section 632 of [title 10, United States Code].").  The court acknowledges that, at the time of LCDR Santana's discharge, SECNAVINST 1920.7B still called for the Secretary to notify the Secretary of Defense of the rationale for not continuing officers who were within six years of retirement.  DA at 46.  But, as the government correctly argues, where Department of Defense and Navy regulations conflict, the court "gives precedence to the Department of Defense regulation."  *Peoples v. United States*, 101 Fed. Cl. 245, 258, n.18 (2011); *see also Casey v. United States*, 8

Cl. Ct. 234, 240 (1985) ("To the extent that Army regulations conflict with those of the Department of Defense, the service regulations must give way.").

Plaintiff next argues that LCDR Santana was not afforded adequate due process rights prior to the non-continuation decision. Due process considerations are only relevant "in cases where a 'stigma' would attach to the discharge," which typically occurs when an officer is dishonorably discharged. *Flowers v. United States*, 80 Fed. Cl. 201, 224 (2008) (internal citations and quotation marks omitted). It is undisputed that LCDR Santana received an honorable discharge that did not contain derogatory information. Moreover, "due process rights are typically fulfilled by notice of the government act and an opportunity to respond before *or after* the act." *Id.* at 224 (quoting *Canonica v. United States*, 41 Fed. Cl. 516, 524 (1998)) (emphasis added). It is undisputed that plaintiff has had the opportunity to challenge the non-continuation decision both before the Secretary and before this court and has done so. Plaintiff has accordingly failed to demonstrate that the Secretary ignored a "material error" in the continuation board's decision on due process grounds.

Finally, plaintiff argues that the Secretary erred by overlooking the Navy's failure to refer LCDR Santana's non-continuation decision for "higher level review" in accordance with Navy guidance applicable to sexual assault victims. *See* DA at 118-151 (OPNAVINST 1752.1B, *Sexual Assault Victim Intervention (SAVI) Program* (Dep't of Navy Dec. 29, 2006)). For the reasons set forth below, the court finds that this guidance does not apply to decisions of continuation boards and therefore the continuation board's failure to refer the non-continuation decision for higher level review on the grounds that

LCDR Santana was a sexual assault victim does not demonstrate that the Secretary ignored a "material error" in the continuation board's decision.

By its own terms, the notice requirements imposed by OPNAVINST 1752.1B ¶ 8(b)(11) do not apply to the Secretary or continuation boards. Instead, OPNAVINST 1752.1B ¶ 8(b)(11) imposes obligations on Commanding Officers (COs) and Navy Personnel Command. *See* DA at 123 (calling for COs to ensure that "[a]ll administrative separation actions involving victims of sexual assault are reviewed by the Commander, Navy Personnel Command"). COs and Navy Personnel Command are not responsible for continuation decisions. *See* 10 U.S.C. § 611(b) (calling for the Secretary to convene continuation boards); 10 U.S.C. § 1558 (calling for the Secretary to convene special boards to review decisions made by continuation boards). Plaintiff's argument that it does not matter that OPNAVINST 1752.1B ¶ 8(b)(11) does not apply to continuation decisions because plaintiff is asserting claims against the United States is without merit. As stated above, the court is tasked with reviewing whether the Secretary erred in concluding that the continuation board's decision was not affected by a material error. Because the continuation board was not bound by OPNAVINST 1752.1B ¶ 8(b)(11), the Secretary did not err in upholding the continuation board's decision without regard to whether OPNAVINST 1752.1B ¶ 8(b)(11) was followed.

Plaintiff's argument that another portion of the guidance, OPNAVINST 1752.1B ¶ 7, applies the guidance "throughout the Navy to all levels of the Navy," Pl.'s Resp. to Def.'s Suppl. Br. at 5, ECF No. 75, and accordingly imposes obligations on continuation boards, is similarly without merit. OPNAVINST 1752.1B ¶ 7 makes clear that the victim

services outlined in the guidance are available to various members of the Navy, including active-duty members, reserve members, and certain retired members.  OPNAVINST 1752.1B ¶ 7(a)-(e).  OPNAVINST 1752.1B ¶ 7 does not impose any obligation on continuation boards to relay non-continuation decisions for higher level review, and does not speak to whether or how OPNAVINST 1752.1B should apply when there are specific processes and procedures for continuation of officers within the Navy, which are governed by separate regulations.

Finally, OPNAVINST 1752.1B states that it does not impose any legally enforceable obligations or create any rights that are enforceable by plaintiff (or any other similarly situated officer).  OPNAVINST 1752.1B ¶ 3 states:

> This instruction establishes internal Navy policy only and is not intended to, nor does it, create any rights, substantive or procedural, enforceable at law or equity by any victim, witness, suspect, accused, or other person in any matter, civil or criminal, and places no limits on the lawful prerogatives of the Navy or its officials.

Based on this explicit limitation, any violation of OPNAVINST 1752.1B does not provide a basis for finding a material error and overturning the Secretary's decision or LCDR Santana's discharge.

Despite the limits on the application of OPNAVINST 1752.1B, the record reveals that the issue of LCDR Santana's alleged sexual assault was not ignored.  Following the court's initial remand, plaintiff submitted additional materials to the Secretary for consideration, which included arguments related to LCDR Santana's alleged sexual assault.  *See* AR at 37-38, 48-49.  On January 30, 2020, the government informed the court that the Secretary had not considered plaintiff's supplemental materials in rendering

his revised decision. *See* ECF No. 46. Accordingly, on January 31, 2020, the court ordered the Secretary to rescind the initial remand decision and issue a new decision that did consider plaintiff's supplemental materials. ECF No. 47. The revised decision, issued on April 21, 2020, specifically acknowledged plaintiff's supplemental materials, including her sexual assault allegations and expressly noted the NCIS investigation conducted in response to those allegations. AR at 4. After considering them, the Secretary ultimately concluded that these allegations were "not germane" to her request for a special board. *Id.* Accordingly, plaintiff has failed to show that the Secretary erred in his conclusion.

The court accordingly finds that the Secretary's decision not to convene a special board on the ground that the continuation board did not commit a material error was not arbitrary, capricious, unsupported by substantial evidence, or contrary to law. Accordingly, the decision must be upheld. *See* 10 U.S.C. § 1558(f)(2)(A).

## V.    CONCLUSION

The court wishes to note that LCDR Santana served this nation for 17 years and that she was honorably discharged. Clearly, LCDR Santana confronted some serious issues near the end of her service. However, the court cannot ignore the record before it. Having reviewed that record, and for the reasons stated above, the government's motion to dismiss plaintiff's claim for relief associated with her alleged post-traumatic stress disorder and disability, ECF No. 55, is **GRANTED.** The government's cross-motion for judgment on the administrative record as to the remaining claims, ECF No. 60, is

**GRANTED** and plaintiff's cross-motion for judgment on the administrative record, ECF

No. 59, is **DENIED.**  The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge